Ileana MARTINEZ–GARCIA,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–71043.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 2004.

Filed April 23, 2004.

Christopher J. Stender and Michael Franquinha, Law Office of Michael Fran-

quinha, Phoenix, Arizona, for the petitioner.

Jonathan Cohn and Terri J. Scadron, United States Department of Justice, Washington, D.C., for the respondent.

Before HALL and GRABER, Circuit Judges, and WEINER,* Senior District Judge.

WEINER, Senior District Judge:

Ileana Martinez–Garcia, a native and citizen of Mexico, petitions for review of the decision of one member of the Board of Immigration Appeals ("BIA") summarily affirming, pursuant to 8 C.F.R. § 3.1(a)(7), the decision of the immigration judge ("IJ") denying her application for cancellation of removal under § 240A(b)(1) of the Immigration and Nationality Act.

### I.

Martinez–Garcia, now eighteen years old, is a native and citizen of Mexico. She entered the United States, along with her mother, without inspection or parole near Nogales, Arizona, on April 25, 1988, at age 3. On March 25, 1997, the Immigration and Naturalization Service issued an Order to Show Cause ("OSC") alleging alienage and entry without inspection. It was served on Martinez–Garcia the same day but was not filed with the immigration court prior to April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, div. C., tit. III, § 308(b)(9), 110 Stat. 3009. An IIRIRA Notice to Appear was issued on April 18, 1997, alleging the same charges that were stated in the OSC.

Before the IJ, Martinez–Garcia admitted removability, but moved for cancellation of removal. The IJ pretermitted this application, finding that Martinez–Garcia failed to meet IIRIRA's requirements for cancellation. Martinez–Garcia also argued she should have been eligible for suspension of deportation under pre-IIRIRA law, see INA § 244(a), 8 U.S.C. § 1254 (repealed), because she was served with the original OSC prior to the effective date of IIRIRA. This too was denied by the IJ. Martinez–Garcia was granted voluntary departure upon the posting of a $500 bond. The IJ's decision was summarily affirmed without opinion by one member of the BIA. A timely petition for our review followed.

### II.

The BIA's determination of purely legal questions is reviewed de novo. *Kankamalage v. INS,* 335 F.3d 858, 861 (9th Cir.2003). When the BIA does not perform an independent review of the IJ's decision and instead defers to the IJ, we review the IJ's decision. *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir.2002).

### III.

Prior to the passage of IIRIRA, the immigration laws provided two types of removal proceedings, deportation (for aliens within the United States) and exclusion (for aliens outside the United States). *See Hose v. INS,* 180 F.3d 992, 994 (9th Cir.1999) (en banc). Under pre-IIRIRA law, an alien against whom deportation proceedings had commenced could apply for suspension of deportation provided she had been continuously physically present

---

* Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

in the United States for seven years, was of good moral character, and could show that deportation would create a severe hardship upon herself or a spouse, parent, or child who is a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1254 (repealed). Under IIRIRA, "removal" replaced "deportation" and "cancellation of removal" replaced "suspension of deportation." *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594, 597(9th Cir. 2002). Cancellation now requires ten years of continuous physical presence in the United States, good moral character, and a showing that removal would create a severe hardship upon a spouse, child or parent who is a citizen or lawful permanent resident of the United States (and no longer upon the alien herself). 8 U.S.C. § 1229b(b).

■ Congress also changed the way deportation proceedings are commenced. Pre–IIRIRA, proceedings began when the INS filed an OSC, pursuant to INA § 242B(a)(1), 8 U.S.C. § 1252b(a)(1) (repealed).[1] Under IIRIRA, removals are commenced by the filing of a Notice to Appear, pursuant to INA § 239(a)(1), 8 U.S.C. § 1229(a).[2] Under both regimes, proceedings commence with the filing of the charging document with the immigration court—not with service upon the alien. *Jimenez–Angeles*, 291 F.3d at 597–98.

Transitional rules apply for aliens who were "in deportation proceedings" prior to April 1, 1997, but whose cases were not completed as of that date. IIRIRA § 309(c); *Jimenez–Angeles*, 291 F.3d at 597. In general, under the transitional rules, IIRIRA's provisions do not apply. *Id.* Therefore, an alien who was "in deportation proceedings" before April 1, 1997,

would be eligible for suspension of deportation under *former* 8 U.S.C. § 1254. For actions initiated after that date, IIRIRA's stricter cancellation-of-removal provisions apply.

## IV.

In a letter dated March 25, 1997, the Office of the Chief Immigration Judge ("CIJ") notified all IJs, immigration court administrators, and court staff that, as of the close of business on March 31, 1997, OSC's issued under pre-IIRIRA law would no longer be accepted for filing from the INS. The letter also directed that OSCs served before April 1, but filed electronically with the court by the INS after that date, should be processed as "failure to prosecute" cases.

Martinez–Garcia argues that the CIJ's directive constituted agency rulemaking that did not comply with the Administrative Procedure Act's notice and comment requirements. *See* 5 U.S.C. §§ 551, 559. Specifically, she asserts that the directive—that court personnel process an OSC filed after April 1, 1997 as a "failure to prosecute"—qualified as a legislative rule requiring full notice and comment in order to be effective, because it altered the definition of when an alien would be considered "in deportation proceedings" under IIRIRA § 309(c). She reasons that IIRIRA's transitional rules did not define what constituted being "in deportation proceedings." Thus, Congress created a statutory gap by failing to provide whether the transitional rules should apply to persons in her circumstance—an alien upon whom an OSC was served before IIRIRA's effective date, but whose OSC was not filed with the

---

**1.** "In deportation proceedings under section 1252 of this title, written notice (in this section referred to as an 'order to show cause') shall be given in person to the alien...."

**2.** "In removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien...."

immigration court before that date. She concludes that, as the CIJ's directive adopted a rule to fill this gap, it qualified as rulemaking.

■ We do not agree that there was a "statutory gap," so we do not reach the question whether the CIJ's directive violated the APA. Congress created a bright-line effective date for IIRIRA and provided transitional rules applicable only to those aliens already "in deportation proceedings" on the effective date. IIRIRA § 309(c); *Jimenez–Angeles,* 291 F.3d at 597. Our decisions have held on numerous occasions, both before and after IIRIRA, that an alien is not "in proceedings" until the appropriate charging document is actually filed with the immigration court. *United States v. Hovsepian,* 359 F.3d 1144, 1165 (9th Cir.2004) (en banc) ("[A] removal proceeding does not 'commence' against an alien until the INS actually files a Notice to Appear with the immigration court."); *Armendariz–Montoya v. Sonchik,* 291 F.3d 1116, 1119(9th Cir.2002) (pre-IIRIRA decisions uniformly stated that deportation proceedings commenced with the filing of the OSC), *cert. denied,* 539 U.S. 902, 123 S.Ct. 2247, 156 L.Ed.2d 110 (2003). Because the INS filed no charging document against Martinez–Garcia prior to the effective date of IIRIRA, she was not "in proceedings" on that date, and the IIRIRA's transitional rules never applied to her. The only charging document available af-

ter April 1, 1997, is the Notice to Appear. Because Martinez–Garcia was served with a Notice to Appear, we conclude there was no error in the IJ's determination that Martinez–Garcia's case was governed by the permanent provisions of IIRIRA.[3]

■ Neither can Martinez–Garcia successfully argue that the CIJ's directive stated a deliberate policy to delay filing OSC's as IIRIRA's effective date approached—in order to subject aliens to the more stringent requirements. It is well settled that the decision to place an alien in immigration proceedings, and when to do it, belongs to the INS (as opposed to the CIJ), and is akin to prosecutorial discretion. *Cortez–Felipe v. INS,* 245 F.3d 1054, 1057 (9th Cir.2001) (Attorney General has discretion regarding when and whether to initiate deportation proceedings); *Yao v. INS,* 2 F.3d 317, 319 (9th Cir.1993) ("As a matter of statutory authority and administrative discretion, the INS is free to decide not to commence deportation proceedings...."). Thus, the CIJ's directive could have had no binding effect upon an alleged decision to place Martinez–Garcia in deportation proceedings after IIRIRA's effective date.

## V.

■ Finally, Martinez–Garcia's argument—that the BIA's summary affirmance regulation, 8 C.F.R. § 1003.1(a)(1), violat-

---

**3.** The INS regulations also state when an alien is "in deportation proceedings." Title 8 C.F.R. § 1240.40, applicable to proceedings commenced prior to IIRIRA's effective date provides:

A deportation proceeding is commenced by the filing of Form I–221 (Order to Show Cause) with the Immigration Court, and an alien is considered to be *in deportation proceedings* only upon such filing. . . .

(Emphasis added.) The identical text appears in 8 C.F.R. § 1240.55, the section governing suspension of deportation and voluntary de-

parture under pre IIRIRA law. In addition, the regulations make clear that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). A "charging document" means, for pre-IIRIRA proceedings, an OSC, and for proceedings governed by IIRIRA, a Notice to Appear. 8 C.F.R. § 1003.13. Finally, "filing" is defined in the regulations to mean "the actual receipt of a document by the appropriate Immigration Court." *Id.*

ed her due process rights because it permitted a single member of the BIA to render a decision without offering a statement of reasons—is foreclosed by our recent decision in *Falcon Carriche v. Ashcroft*, 350 F.3d 845 (9th Cir.2003). We held that streamlining does not offend due process. *Id.* at 850.

PETITION DENIED.